# KATSKY | KORINS LLP

**MEMBERS OF THE FIRM**

ROBERT A. ABRAMS
RANDOLPH AMENGUAL
SHIREEN ARANI
MATTHEW DANOW
ELAN R. DOBBS
DAVID L. KATSKY
ADRIENNE B. KOCH
EUGENE V. KOKOT
ROY M. KORINS
DENNIS C. KRIEGER
THOMAS M. LOPEZ

GREGORY K. MARKS
NEIL S. MILLER
STEVEN H. NEWMAN
ANN RYAN
MERYL LYNN UNGER
MARCY L. WACHTEL
MARK WALFISH
ARIEL WEINSTOCK
JOEL S. WEISS
ELIAS M. ZUCKERMAN

WRITER'S DIRECT DIAL | 212.716.3225

WRITER'S DIRECT FAX | 212.716.3349

WRITER'S EMAIL | akoch@katskykorins.com

OUR REFERENCE |

October 9, 2015

BY ECF

Hon. Loretta A. Preska
 Chief United States District Judge
United States District Court,
 Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re: In re Application of Dr. Heleen Mees ("Mees"), No. 15 Misc. 262 (LAP)

Dear Judge Preska:

I am co-counsel (together with Timothy Keane of Quirk & Bakalor) for Willem H. Buiter ("Buiter"). Pursuant to the Court's Order (Dkt. # 19) and Local Rule 37.2, I write to set forth certain issues that we will seek to address at the October 13, 2015 conference in this matter.

Mees's counsel has announced that he will challenge certain privilege designations made by Buiter, based on a claim that the communications to which they relate were made in furtherance of Buiter's commission of the crime or fraud of falsely reporting Mees to the police for stalking and harassing him. As detailed below, however, even to obtain *in camera* review based on such a claim Mees would have to make a factual showing sufficient to support a reasonable belief that Buiter's acts in fact constituted a crime or fraud under New York law. Because Mees has not even attempted to make such a showing, we respectfully submit that her argument should be rejected without the need for further submissions. If the Court disagrees, however, then in light of Mees's burden of proof we respectfully request a briefing schedule pursuant to which (a) she briefs first; and (b) the briefing addresses not only the factual showing Mees must make, but also the threshold question of whether this Court should stay any adjudication on the ground that it requires a resolution of issues of state law that are currently before the state court to which Mees herself has submitted them. (*See infra*, n.4).

Background

This application stems from Mees's 2013 arrest and prosecution for stalking and harassing Buiter. *Mees was never acquitted.* Instead, she made a deal pursuant to which the charges would be dismissed if she underwent counseling and complied with an Order of Protection that required her to "stay away" from Buiter and his wife for a year. Such dismissal occurred in March 2015.

# KATSKY | KORINS LLP

605 Third Avenue New York, NY 10158  PHONE 212.953.6000  FAX 212.953.6899  www.katskykorins.com

Hon. Loretta A. Preska
October 9, 2015
Page 2

Meanwhile, in June 2014 Mees commenced one lawsuit against Buiter in the Netherlands (the "Dutch action"), and another in New York state court (the "Brooklyn action"). Both lawsuits are premised on allegations that Buiter falsely reported Mees to the police in 2013. In the Brooklyn action, Mees asserts claims for defamation and related torts, including false arrest.

Through this application, Mees sought leave to serve subpoenas on Buiter's employer, Citigroup, Inc. ("Citi"), to obtain documents for use in the Dutch action. The application was largely resolved through a stipulation (the "Stipulation," Dkt. # 21) in which the parties agreed (among other things) that Citi would produce certain documents and Buiter would have certain rights, including a right to remove documents from the production based on privilege. The Stipulation also provides that if Mees challenges any of Buiter's privilege designations, Buiter will move for a protective order.

Citi produced 1,652 pages of documents to Buiter on September 11, 2015. Buiter designated 48 pages as privileged. The remaining 1604 pages were produced to Mees's counsel, together with a privilege log, on September 18.

Mees's Objection

On October 2, Mees's counsel advised by phone that Mees would contend that the documents we had withheld based on attorney-client and work product privilege were subject to the "crime-fraud" exception to those privileges. Thereafter, he memorialized his position in a letter – in which he added that Mees would also contend that documents we had withheld based on spousal privilege are not privileged because they constitute communications in furtherance of a conspiracy to commit a fraud or crime. These are Mees's only challenges to our privilege designations. (Copies of counsel's letter and our response are Exhibits A and B, respectively).

As we understand it, the basis for Mees's position is her allegation that Buiter and his wife falsely reported Mees to the police. But as a matter of law,[1] Mees cannot overcome any privilege simply by alleging that a crime or fraud has occurred. Rather, she must make a showing that (a) Buiter committed a crime or fraud; and (b) the communications at issue were in furtherance of that crime or fraud. To obtain *in camera* review, Mees would have to submit *evidence* sufficient to support a belief by a reasonable person that such review may establish each of those two elements.[2]

---

[1] Although counsel's letter cites state law, in this proceeding the question of privilege is governed by federal law. *See In re Application of Federation Internationale de Basketball*, 117 F. Supp.2d 403, 407 (S.D.N.Y. 2000).

[2] *See, e.g., In re 650 Fifth Ave.*, No. 08 Civ. 10934, 2013 WL 3863866, *1-2 (S.D.N.Y. July 25, 2013) (setting forth this two-pronged inquiry, and noting that the mere assertion that communications were undertaken in furtherance of a fraudulent scheme alleged in the complaint was not sufficient to warrant *in camera* review); *Sekisui Amer. Corp. v. Hart*, No. 12 Civ. 3479 (SAS)(FM), 2013 WL 2951924, *6 (S.D.N.Y. June 10, 2013) ("To invoke the crime-fraud exception, . . . [t]he party seeking disclosure must show that a reasonable person would conclude *from the evidence* that there is a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud that was furthered by the withheld communication. . . . *If that showing is made*, a court may conduct an in *camera* review to determine whether the facts accord with the requester's belief, such that the exception applies.") (emphasis added; citations and internal quotations omitted); *In re In-Store Advertising Sec. Litig.*, 163 F.R.D. 452, 459 (S.D.N.Y. 1995) ("party seeking disclosure" based on crime-fraud exception "must show not simply probable cause to believe that fraud has been committed, but that there is probable cause to believe that the communications between the attorney and client or the work product produced by the

**KATSKY KORINS** LLP

605 Third Avenue New York, NY 10158   PHONE 212.953.6000   FAX 212.953.6899   www.katskykorins.com

Hon. Loretta A. Preska
October 9, 2015
Page 3

Mees has so far cited only her own allegations that Buiter made statements to the police that were false. This is not sufficient even to obtain *in camera* review, and we submit that Mees's argument can and should be rejected now on that basis. But if the Court disagrees, then the question of whether or not Mees can make the factual showing necessary to warrant *in camera* review will require the submission of evidence. Because the burden is on Mees to make that factual showing in the first instance, we respectfully suggest that she should make her submission first, with Buiter being given an opportunity to respond.[3] We anticipate that Buiter's response will include (a) the 2,506 emails that Mees sent to Buiter's personal email address during the roughly one-year period leading up to her arrest; (b) the six emails Buiter sent her from that address during that same period; and (c) the over 1,000 pages of additional emails that Citi produced from its own servers. We believe the evidence will show that Mees *did* stalk and harass Buiter. But at the very least, it is enough to preclude a reasonable person from believing that Buiter did anything wrong when he reported her to the police – let alone that his wife or his lawyer facilitated, concealed, or conspired in his commission of a crime. It will thus preclude a finding that Mees has made a sufficient factual showing to warrant *in camera* review.[4]

### Further Submissions

We ask the Court to reject Mees's argument without the need for further submissions. But if the Court disagrees, we ask (pursuant to ¶ 4 of the Stipulation) that it schedule such submissions, with Mees's coming first. We will also request an order permitting certain material to be filed under seal (pursuant to ¶ 7(c) of the Stipulation), and permitting certain voluminous exhibits to be filed on disk or in hard copy.

Respectfully yours,

Adrienne B. Koch

cc:  Olav A. Haazen, Esq. (*by ECF*)
     Brooke Alexander, Esq. (*by ECF*)
     Cora MacLean, Esq. (*by email*)
     J. Michael Riordan, Esq. (*by email*)
     Timothy J. Keane, Esq. (*by email*)

---

attorney was *in furtherance of the fraud*"; *in camera* review "is not . . . to be routinely undertaken," and requires the party seeking disclosure to produce evidence of *both* elements) (emphasis in original; citations and internal quotations omitted).

[3] We recognize that the Stipulation contemplates Buiter moving for a protective order (and thus presumably briefing first). The nature of Mees's objection, however, places upon her the burden of making a factual showing. We submit that it would not make sense for us to address the question of whether she has met that burden until she has attempted to do so.

[4] There is a threshold question that should also be addressed in any briefing: whether this Court should adjudicate this issue now. Mees's allegation that Buiter lied to the police forms the heart of her claims in the Brooklyn action, where the state court will determine whether Buiter did anything wrong. Her arguments about privilege call upon this Court to determine the same issue. We question whether it is appropriate for this Court to do so, rather than exercise its discretion to stay any such determination until the state court has ruled in the action Mees herself commenced. *See In re Hörler*, 799 F. Supp. 1457 (S.D.N.Y. 1992) (applying principles of "*Colorado River*" abstention in a § 1782 proceeding); *see generally Garcia v. Tamir*, No. 99 Civ. 0298 (LAP), 1999 WL 587902 (S.D.N.Y Aug. 4, 1999) (discussing those principles).